Estate of Charles H. M. Atkins, deceased, Warner Lewis Atkins, Executor, v. Commissioner.
Estate of Charles H. Atkins v. Commissioner
Docket No. 29170.
United States Tax Court
1951 Tax Ct. Memo LEXIS 70; 10 T.C.M. (CCH) 997; T.C.M. (RIA) 51309; October 18, 1951
*70 Elden McFarland, Esq., 618 Southern Bldg., Washington, D.C., and C. Chester Guy, Esq., for the petitioner. John O. Durkan, Esq., for the respondent. VAN FOSSAN Memorandum Findings of Fact and Opinion The respondent determined an estate tax deficiency of $233,846.80. The only issue remaining after settlement of other questions by stipulation is the determination of the fair market value of 3,748 shares of the stock of the Warner Elevator Manufacturing Company, as of April 14, 1948. Findings of Fact The facts stipulated are so found. Additional facts are gleaned from the record. Warner L. Atkins is Executor of the estate of his father, Charles H. M. Atkins, who died on April 14, 1947. The petitioner's decedent owned, at his death, 3,748 of the 7,821 issued shares of the Warner Elevator Manufacturing Company, hereinafter called the Warner Company. The remaining shares, except 10 shares of Treasury stock, were held principally by Company employees and their relatives. In decedent's estate tax return, the petitioner chose the optional valuation date of April 14, 1948, as allowed by section 811 (j) of the Internal Revenue Code. [1] The petitioner *71 valued the stock at $374,800, that is, at $100 per share. The respondent determined a value of $220 per share for a total valuation of $824,560. Warner L. Atkins is president and a director of the Warner Company which was incorporated under the laws of Ohio, in 1887, and is located at Cincinnati, Ohio. The corporation manufactures elevators and also repairs and maintains existing elevator installations. The Warner Company is engaged in competition with over 30 firms in the elevator business and it reported less than 2 per cent of the *72 sales bookings of new geared elevators during the period in question. Warner Company stock is not listed or sold on the stock exchange and there have been only a few sales since 1929. The estate of a former employee made several sales of five shares each in July, 1947, and 25 shares were sold in November, 1947, at $100 per share. One sale of 20 shares was made on April 5, 1949, at $100 per share by the general superintendent of the Company to the Atkins Realty Company of which Warner Atkins is president. The corporate balance sheet of the Warner Company at the close of the calender years 1947 and 1948 was as follows: ASSETS
1947
1948
Cash
$ 142,393.86
$ 153,284.97
Securities
1,046,082.65
1,025,294.10
Accounts Receivable
63,340.33
45,013.54
Inventories
308,451.34
379,944.39
Contracts Open
413,960.25
465,319.21
Other Assets
2,928.71
1,888.24
Permanent Assets
162,623.31
204,897.56
Other Real Estate
4,750.00
4,750.00
Patents, etc.
16,525.23
1.00
$2,161,055.68
$2,280,393.01
LIABILITIES
Accounts Payable
$ 80,145.85
$ 99,554.00
Accruals
18,922.40
9,539.68
Advances on Con-
tracts
483,576.61
535,698.94
Reserves
120,000.00
70,000.00
Capital Stock
782,100.00
782,100.00
Surplus
676,310.82
783,500.39
$2,161,055.68
$2,280,393.01
*73 On April 14, 1948, the Warner Company held the following securities as assets acquired through the investment of corporate earnings, the Warner Company dividend policy being conservative: Value April
14,1948
Domestic corporation stocks and
land trust certificates
$ 171,414.75
Municipal bonds
158,694.57
U.S. Treasury bonds
261,417.50
U.S. Defense, War and Savings
Bonds, Series "F" and "D"
501,280.00
Total
$1,092,806.82 The Company's officers have had no intention of liquidating the corporation or distributing these security assets. The corporation owned over 60 pieces of large machinery which were more than 20 years old. The replacement cost of these items had been estimated at $400,000 and $500,000. The gross sales, net profit (after income tax), and dividends per share for the years 1944 to 1948, inclusive, were as follows: Net
Dividends
Gross Sales
Profit
Per Share
1944
$ 813,124
$ 72,467
$6.00
1945
794,288
64,174
6.00
1946
718,962
47,092
4.00
1947
1,060,674
117,810
5.00
1948
1,346,266
120,580
6.00
In the petition, petitioner asserted the value of the stock to be $318,580, or $85 per share, *74 and claimed an overpayment of $25,299. Opinion VAN FOSSAN, Judge: The sole issue in this proceeding requires the determination of the fair market value of 3,748 shares of stock held by the decedent at his death. The question is one of fact, and there is no one definite formula to fix the value as that term is used in the statutes. The stock of the Warner Company, a closely held corporation, was not listed on the stock exchange and no market price quotations are available. There were three series of sales at $100 per share within a period of one year of the critical date, April 14, 1948. These sales at par, however, involve only a few shares and are not necessarily conclusive for purposes of evaluating 3,748 shares. Various factors which would influence a buyer and seller are employed in the determination of the value of stock in a closely owned corporation in the absence of representative sales. Mathilde B. Hooper, Administratrix, 41 B.T.A. 114. Among the criteria to be considered are yearly earnings, asset value, dividends paid, net worth, and expert opinion. Under section 811 (k), Internal Revenue Code, [2] the value of securities of corporations *75 engaged in a similar business which are listed on the exchange are to be considered as a recognized test of value. Horlick v. Kuhl, 62 Fed. Supp. 168. The average book net worth of the corporation in 1947 and 1948 was $1,512,005.60, and the book value of the stock averaged over $190 per share. The value we seek, however, is the fair market value of a 48 per cent stock interest and book value may not reflect the price a willing and informed buyer and seller would agree to. Augustus E. Staley, 41 B.T.A. 752; Barber Securities Corporation, 45 B.T.A. 521. A method *76 of evaluating stock in a close corporation, sometimes used, is the capitalization of average earnings. The respondent objects to this method because of the large accumulation of securities held as capital assets which were not devoted to manufacturing. The respondent contends that the value derived from the capitalization of earnings must be increased by the added value of the excessive capital which should be distributed to the stockholders. The petitioner, however, claims that the stock, land trust certificates, and Government bonds were needed by the corporation to aid in the replacement of old machinery and to help obtain business by demonstrating a strong financial position to prospective purchasers who are interested in service of the elevator over its long life. A further need for these securities is said to exist in obtaining performance guarantee bonds as a preferred risk at lower rates. In a practical appraisal of the value of stock the question of whether working capital was excessive or not may depend, to a great extent, upon the business judgment of the person making the determination. In any case, there is nothing to indicate that the liquidating value of these securities *77 would be distributed to the stockholders. The president of the corporation testified there was no intention of liquidating and that the Company, with its conservative dividend policy, utilized earnings to buy these stocks and bonds for the reasons stated above. Another relevant factor in the determination of a value for these shares is the fact that this stock would not possess the marketability of listed securities. Wood v. United States, 29 Fed. Supp. 853. For this reason, the stock of a closely owned corporation would probably, in normal circumstances, sell at a lesser figure than comparable stock on the exchange. The value of the underlying assets must be considered with this factor in mind. Petitioner's two expert witnesses estimated the value of the stock at $65 and $90 per share, respectively. Respondent's expert witness fixed a value of $140. The respondent on brief makes a lame effort to defend the value $220of per share fixed in the notice of deficiency. This value was based on a capitalization of assumed dividends of $12 and giving effect to his contention that the securities account was excessively large. Upon consideration of all of the facts and circumstances, *78 and by the employment of our best judgment, we determine that the value of the Warner Company stock on April 14, 1948, was $105 per share. Decision will be entered under Rule 50. Footnotes
1. SEC. 811. GROSS ESTATE. The value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated, except real property situated outside of the United States - * * *
(j) Optional Valuation. - If the executor so elects upon his return (if filed within the time prescribed by law or prescribed by the Commissioner in pursuance of law), the value of the gross estate shall be determined by valuing all the property included therein on the date of the decedent's death as of the date one year after the decedent's death, * * *.↩
2. SEC. 811. GROSS ESTATE. * * *
(k) Valuation of Unlisted Stock and Securities. - In the case of stock and securities of a corporation the value of which by reason of their not being listed on an exchange and by reason of the absence of sales thereof, cannot be determined with reference to bid and asked prices or with reference to sales prices, the value thereof shall be determined taking into consideration, in addition to all other factors, the value of stock or securities of corporations engaged in the same or a similar line of business which are listed on an exchange.↩